## BILLS OF EXCEPTIONS—NEGLIGENCE—MUNICIPAL CORPORATIONS.

[Huron (6th) Circuit Court, April Term, 1905.]

Haynes and Parker, JJ.

### NORWALK (CITY) v. JESSIE JACOBS.

1. BILL OF EXCEPTIONS BECOMES PART OF RECORD ALTHOUGH NOT SIGNED AT END, WHEN.

    A bill of exceptions will be considered as part of the record although not signed at the end thereof by the trial judge, when it appears that it is attached to a cover prepared and used for such purpose wherein is stated, among other things, the time of receiving the bill, and the bill itself contains a statement to be made by the trial judge, which he signs, that he received and allowed the bill on certain dates, and thereafter turns the same over to the clerk of courts and is by him filed.

2. CITY LIABLE FOR ALLOWING TELEPHONE POLES IN STREETS, WHEN.

    A municipal corporation is responsible for injuries resulting to a traveler upon one of its streets from coming into contact with a pole placed in such a position by a telephone company as to become a public nuisance or dangerous; or if such pole should subsequently become dangerous or a public nuisance to the knowledge of the municipality, or in the exercise of ordinary and reasonable prudence. it should have obtained knowledge thereof, it would also be liable.

3. WHETHER TELEPHONE POLE IN STREET IS NUISANCE IS QUESTION FOR JURY, ETC.

    Whether or not a telephone pole placed in a public street by a telephone company is dangerous or a public nuisance, is a question to be submitted to the jury under proper instructions by the court; and, in deciding the question, they should consider the situation of the pole and how it was placed, and whether it was in fact situated in a position that was really dangerous or not.

ERROR to Huron common pleas court.

**E. G. Martin** and **J. R. McKnight,** for plaintiff in error.

**S. M. Young,** for defendant in error.

## HAYNES, J.

This cause of action arose from the alleged negligence on the part of the city of Norwalk, in permitting a certain telephone pole to stand in the street, whereby the plaintiff below received injuries resulting from a horse shying at an electric car, passing over to the side of the road and coming in contact with this electric pole, or the wheels of the buggy coming in contact with it. The accident happened at a place called Alling's Corners, about two miles from the courthouse in the eastern part of the city.

The case was tried to a jury and a verdict rendered in favor of the plaintiff below for $3,500. A bill of exceptions was taken and was sent

to the judge who tried the case, but by some oversight he failed to sign it at the end of the bill of exceptions, but it was attached to the cover that has been prepared and used in connection with this bill of exceptions and which, we take it, becomes a part of the papers wherein is stated the time of receiving it and various other matters; and in the bill of exceptions, among other things, there is a statement to be made by the trial judge which he signs and that he received, January 10, 1905, the bill of exceptions and that he allowed the same this January 12, 1905. Then it was signed by the trial judge and turned over by him to the clerk of the court and was duly filed in this court.

Objection was made to this court considering the bill of exceptions at all, but we are of the opinion that that is so far a part of the bill of exceptions, that we should consider, as the signature of the trial judge, that he did sign the bill of exceptions and that he did allow it.

The bill of exceptions, however, has another difficulty, and that is, it in fact does not contain all the evidence, that certain papers were offered in evidence which were to be attached and should have been in the bill of exceptions but which were omitted; and the result of this combination of circumstances is, that in making an examination of the case, we examined it in regard to any errors in the admission or rejection of evidence, and in the charge of the court. We feel constrained to reverse this judgment.

The evidence tended to show that the street out there was in the nature of a public highway rather than a street; that it had been graveled or macadamized in some form, so that it was crowned, it is said, in the center of the street, some twelve or fourteen inches higher than the borders of the street, that although there are no gutters, still it went down to a point where there are trees and where there is a place reserved for the public to walk upon; in other words it is ground that would ordinarily be used for a sidewalk, and there is a space which is used for the growing of trees and grass for ornamentation. It is a road that is rather away from the center of business and the testimony shows that a pole had been erected by the telephone company and was erected very near this bank, standing a little perhaps in the gutter. The exact distance that it is standing in the gutter, so-called, is in dispute, some testifying that it stands very near the edge of it, and others that it stands at some little distance. It is said that it is either not in the original direction or condition it was when erected; that it now leans over some fourteen or fifteen inches toward the center of the road.

It is claimed that this lady who was driving along, was herself carrying a child and had a friend with her carrying another child,

Norwalk v. Jacobs.

when the horse started and crowded or ran over near the outer edge of the road and that there the buggy hit this pole, that the wheels either hit it, or else it was hit in the top by the pole leaning over. It is said that the top of the buggy was taken off the buggy and the ladies were thrown upon the ground and this lady suffered the injury of a broken limb and it is claimed she suffered other injuries.

The telephone company, of course, put up the pole; the city, however, is responsible, if it was placed in a position where it would become a public nuisance and dangerous, or if it should become so afterwards, so that the city should have knowledge of that matter, or in the exercise of ordinary and reasonable prudence should obtain knowledge of that fact.

The law on that subject, as cited by the authorities, is well stated in the case of *Denver* v. *Sherret,* 88 Fed. Rep. 226 [31 C. C. A. 499; 60 U. S. App. 104], decided by the circuit court of appeals,—decided by a majority of the court, however; and the doctrine in regard to the rights of the city are laid down also very well in Elliott, Roads & Streets Sec. 824. Light may also be thrown upon the subject by *Cincinnati* v. *Fleischer,* 63 Ohio St. 229, 234 [58 N. E. Rep. 568]—a decision by the Supreme Court of this state.

The court, in its charge to the jury, said that the pole was a nuisance and that the city was liable for its condition, which, of course would be true, if the plaintiff ran against it without contributory negligence, which is not claimed; so that it would simply leave the question to be decided against the city without anything further.

Now, we think that question was one that should have gone to the jury with proper instructions as to the rights and duties of the city with regard to the erection of that class of poles, or permitting the erection of that class of poles by a corporate company; and it should have gone to the jury upon the question of how and where it was situated, whether it was in fact situated in a position that was really dangerous or not. I have very serious doubts myself whether that pole was in a position where it could be said to be in a dangerous condition, or to be said to be a nuisance. However, that will be a question for a jury to decide; having stated the rights of the city, as well as its liabilities, it was also a question that should have been charged in regard to the amount of roadway which it left for persons to pass along. It is claimed that between the street and the railroad, there was a broad lawn or road there that was ample and sufficient and that there would be no reason to suppose that any danger would arise to persons passing along even if the horse should shy.

Now, those were all questions that should have gone to the jury and that should have entered into discussion in their minds in regard to the liability; but as I have said, when they went out, all they had to say was, the court has said that this is a nuisance and the plaintiff says she ran against it, and there is no claim that she was negligent, and therefore she is entitled to recover.

Now, upon this question, there is a case cited by defendant in error, *Fisher* v. *Mount Vernon (City)*, 6 Am. Neg. Rep. 356. It is a decision by the supreme court of New York in its appellate division, second department, in which is set forth the general rights of the city, or the liabilities of the city; and in that case, it will appear from a reading of it, and from a reading of the syllabi that the court proceeded with the view that the case was one that should be submitted to the jury; that it was a question to be left to the jury and upon that point I think it is a decision in favor of the proposition that we have laid down in this case.

The judgment of the court of common pleas will be reversed, the verdict of the jury set aside and the case remanded for a new trial.

**Parker, J.,** concurs.